# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| HERNANDEZ CAMPBELL, *On behalf of himself and all others similarly situated,* | )<br>)<br>) |
| Plaintiff, | ) Case No. 2:16-cv-04059-NKL |
| v. | ) |
| ADECCO USA, INC., | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant Adecco USA's Motion to Compel Arbitration [Doc. 8]. For the following reasons, the motion is denied.

**I.  Background**

In August or September 2015, Plaintiff Hernandez Campbell applied for an employment position with Adecco, a staffing company. As part of his application, Campbell completed and signed a series of electronic documents. One of these documents, the Dispute Resolution and Arbitration Agreement form, stated in relevant part:

> [A]ny and all disputes, claims, or controversies arising out of or relating to this Agreement, the employment relationship between the parties, or the termination of the employment relationship shall be resolved by binding arbitration. . . BY SIGNING THIS AGREEMENT, THE PARTIES HEREBY WAIVE THEIR RIGHT TO HAVE ANY DISPUTE,

1

CLAIM OR CONTROVERSY DECIDED BY A JUDGE OR JURY IN A COURT.

> . . . [Adecco] may change or modify the terms of the [Agreement] at any time with reasonable prior notice to Employee. It is understood that future changes will supersede or eliminate, in whole or in part, the terms of the [Agreement]. Current versions of the [Agreement] will be posted by [Adecco] on [Adecco's] internet site or such other location(s) designated by [Adecco].
>
> . . . If any provision(s) of this [Agreement] is declared overboard, invalid or unenforceable such provision(s) shall be severed from this [Agreement] and the remaining provisions of this [Agreement] shall remain in full force and effect and shall be construed in a fashion which gives meaning to all of the other terms of this [Agreement].

[Doc. 8-1, pp. 10-11].

Campbell was given an opportunity to opt-out of this Arbitration Agreement by requesting a separate opt-out form within thirty days. However, Campbell electronically signed the Arbitration Agreement and did not request an opt-out form.

In November 2015, Campbell interviewed at Adecco's office and was hired as a forklift driver for Challenge MFG, a third-party Adecco client. Campbell started working for Challenge MFG in late November 2015.

On December 24, 2015, Adecco informed Campbell he was no longer eligible for employment and that he should no longer report for work at Challenge MFG. According to Campbell's complaint, this decision was based upon a consumer credit report Adecco had obtained. Campbell further asserts he was not given a reasonable amount of time to challenge any inaccuracy within the consumer report. Campbell subsequently filed this

class action suit, alleging that Adecco violated the Fair Credit Reporting Act by retracting an offer of employment based upon information contained in a consumer credit report.

## II. Discussion

Agreements to arbitrate disputes are enforceable and strongly favored under federal law. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). If such an agreement is valid, a "court[] must rigorously enforce [it] according to [its] terms." *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013). Yet an arbitration agreement must still comply with the principles of contract law. *See* 9 U.S.C. § 2; *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). In Missouri, a contract must contain an "offer, acceptance, and bargained for consideration." *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988). An arbitration agreement is unenforceable if it lacks these required elements.

Adecco maintains that it entered into a valid Arbitration Agreement with Campbell and that the scope of this agreement covers the FCRA dispute at issue. Accordingly, Adecco argues that the Court must either compel Campbell to arbitrate his claims, dismiss the case, or stay these proceedings until arbitration occurs. *See* 9 U.S.C. §§ 3, 4.

In his brief, Campbell does not dispute that he signed the Arbitration Agreement and that the agreement pertains to his FCRA claim. Campbell argues, however, that the Arbitration Agreement lacks bargained-for consideration, making it an illusory and thus unenforceable contract. Campbell focuses on the Modification Provision, which provides

that "[Adecco] may change or modify the terms of the [Agreement] at any time with reasonable prior notice to Employee." [Doc. 8-1, p. 11]. This provision, he argues, provides Adecco an unenforceable unilateral right to modify the Agreement's terms at its sole discretion. Adecco maintains that its Modification Provision is enforceable and that, in the alternative, the provision can be severed from the Agreement if the Court finds it invalid.

Consequently there are two dispositive questions before the Court: (1) whether the Arbitration Agreement lacks consideration such that it is unenforceable, and (2) if so, whether the Modification Provision can be severed from the Agreement.

### A. Consideration

Under Missouri law, a contract contains valid consideration where a "benefit [is] conferred upon the promisor or [there is] a legal detriment to the promisee." *State ex rel. Kansas City v. State Highway Comm'n*, 163 S.W.2d 948, 953 (Mo. 1942). Campbell argues that the Arbitration Agreement lacks adequate consideration because Adecco incurred no such legal detriment: Adecco offered Campbell only the possibility of at-will employment and a promise to arbitrate that was subject to unilateral modification.

The Missouri Supreme Court considered an identical question in *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770 (Mo. banc 2014). In *Baker*, an employer and an at-will employee signed a contract agreeing to arbitrate any disputes. The agreement contained a clause permitting the employer to modify the contract after providing notice. Per its terms, the employer "reserve[d] the right to amend, modify or revoke this agreement upon thirty (30) days' prior written notice to the Employee." *Id.* at 773.

4

After getting fired from his at-will position, the *Baker* employee filed a class action lawsuit seeking compensation for allegedly unpaid overtime hours. The employer filed a motion to compel arbitration. It argued that the parties had mutually promised to arbitrate such disputes, and that this contract was enforceable because it contained two sources of consideration: (1) "[the employee's] continued employment" and (2) "mutual promises to resolve claims through arbitration." *Id.*

The Missouri Supreme Court disagreed and held that no consideration existed. In reaching this conclusion, the *Baker* court first found that "continued at-will employment does not constitute valid consideration." *Id.* at 775. Second, because the employer "retain[ed] unilateral authority to amend the agreement retroactively, its promise to arbitrate is illusory and is not consideration." *Id.* at 776-77. *See also Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 442 (Mo. Ct. App. 2010) ("A contract that purports to exchange mutual promises will be construed to lack legal consideration if one party retains the unilateral right to modify or alter the contract as to permit the party to unilaterally divest itself of an obligation to perform the promise initially made.").

Campbell's case is directly analogous. As in *Baker*, the contracts signed between Campbell and Adecco secured him, at best, a promise of at-will employment. Further, also as in *Baker*, Campbell and Adecco both facially promised to arbitrate any disputes—but Adecco alone retained the right to "change or modify the terms of the [Agreement] at any time with reasonable prior notice." [Doc. 8-1, p. 11]. Adecco's promise to arbitrate is therefore illusory and cannot constitute consideration. Presumably, at any time before or after a dispute arises, Adecco could give Campbell notice that while he is still

5

obligated to arbitrate his claims, Adecco will no longer consider itself bound by the results of that arbitration.

At oral argument, Adecco contended that its Agreement is distinguishable from the one in *Baker*. Unlike the provision in *Baker*, Adecco argued, its Modification Provision requires reasonable notice and only applies to future changes. The Court does not find this position persuasive. While the Modification Provision requires "reasonable prior notice," [Doc. 8-1, p. 11], so too did the provision in *Baker*, which demanded "thirty (30) days' prior written notice" before an alteration, *Baker*, 450 S.W.3d at 773. These clauses are not functionally distinguishable. If anything, the *Baker* provision imposed greater limitations on the employer by clearly delineating the point at which notice would no longer be reasonable.

Further, although Adecco's Modification Provision discusses "future changes," this phrase simply signals that changes may occur in the future; it does not limit how those changes are applied. Adecco stated at oral argument that it only envisioned applying future changes prospectively, regardless of how the provision was worded. But just as in *Baker*, the plain language of the Modification Provision does not limit Adecco to prospective changes. Rather, "the fact remains that the language of the agreement would permit . . . [Adecco] to disclaim or modify its arbitration promises unilaterally at any time for its own benefit."[1]  *Baker*, 450 S.W.3d at 777.

---

[1] Adecco also argues that there is a difference between a party's unilateral power to "modify" and the power to "terminate, revoke or cancel" an agreement. [Doc. 18, p. 7]. The Court again does not see a practical distinction between these concepts in Campbell's case. The parties' Modification Provision states that Adecco may "eliminate, in whole . . . the terms of the [Agreement]." [Doc. 8-1, p. 11]. Even

6

As in *Baker*, therefore, the parties' Arbitration Agreement does not contain valid consideration.

**B. Severability**

In the alternative, Adecco argues that the Court should sever the Modification Provision from the remainder of the Agreement. Pointing to the severability clause contained in the Arbitration Agreement, Adecco maintains that the Modification Provision can be severed because it is not essential to the parties' mutual promise to arbitrate. Campbell responds that a valid contract was never formed between the parties, and thus the entire agreement—including the severability clause—is unenforceable.

In Missouri, courts "will give effect to a severability clause when the clause being severed is not a necessary part of the contract." *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 436 (Mo. banc 2015). "Whether a contract is severable . . . depends on the circumstances of the case and is largely a question of the parties' intent." *Woods v. QC Fin. Servs., Inc.*, 280 S.W.3d 90, 99 (Mo. Ct. App. 2008).

Considering Campbell and Adecco's intent in signing their Arbitration Agreement, the Court observes that Adecco's modification power appears central to the bargain as a whole. Campbell was provided a narrow opportunity to opt out of the Agreement's binding arbitration and class action waiver, while, on the other side, the Agreement gave Adecco almost unlimited capacity to "modify the terms . . . at any time." [Doc. 8-1, p. 11]. It would be inequitable to enforce Campbell's promise to arbitrate in spite of—and,

---

without cancelling the Arbitration Agreement, Adecco is thus empowered to eliminate its terms—a power that clearly allows Adecco to modify the parties' mutual promise to arbitrate.

7

in part, because of—Adecco's illusory promise made in return. *See Glassford v. BrickKicker*, 35 A.3d 1044, 1054 (Vt. 2011) ("[The employer] should not benefit from a binding arbitration clause that is a major component of the scheme to offer plaintiffs an illusory remedy for any claims they might have against [the employer].").

Citing *Eaton* and *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798 (Mo. banc 2015), Adecco argues that the parties' intent was to arbitrate their disputes, and therefore, by removing the Modification Provision from the Agreement, the Court can make Adecco and Campbell's intent enforceable rather than illusory. Yet *Eaton* and *Hewitt* are distinguishable. Both cases involved an unconscionable term contained within an otherwise valid contract; neither concerned a contract lacking in consideration. *See Hewitt*, 461 S.W.3d at 809 (finding that plaintiff's "argument that the agreement lacked consideration fails"); *Eaton*, 461 S.W.3d at 434 ("Both parties exchanged consideration for the entire contract."). Because a contract cannot form without consideration, *Johnson*, 745 S.W.2d at 662, the Court is faced with a more fundamental question in this case: whether Campbell and Adecco ever entered into an arbitration contract in the first place.

As such, more instructive to this inquiry are cases where there is "a dispute over whether a contract was ever formed." *Piano v. Premier Distrib. Co.*, 107 P.3d 11, 16 (N.M. Ct. App. 2004). In *Piano*, the court considered a similar modification provision that allowed the employer to unilaterally alter arbitration agreements. After deciding the contract lacked consideration, *Piano* concluded that when an "agreement is not supported by consideration, a contract was never formed," and therefore a court should not "rewrite

the [contract] such that it is supported by consideration"—even if this could be accomplished by severing a single clause. *Id*. *See also United Servs. Auto. Ass'n v. Pells*, 2004 WL 792666 (Wash. Ct. App. 2004) (when an additional meeting of the minds is required to save a contract, the entire contract is unenforceable, including any agreement to arbitrate).

Likewise, in *Birbrower, Montalbano, Condon & Frank v. Superior Court*, 949 P.2d 1 (Cal. 1998), the California Supreme Court examined a contract that the plaintiff claimed lacked consideration. The *Birbrower* court framed its analysis by distinguishing between contracts where "part of the consideration given for the contract involves illegality" and contracts wholly containing "illegal consideration." *Id*. at 12. In the first situation, the invalid portion is severable. In the second, however, courts cannot save the contract by severing a provision. "If the court is unable to distinguish between the lawful and unlawful parts of the agreement, the illegality taints the entire contract, and the entire transaction is illegal and unenforceable." *Id.* (citing cases) (internal quotation marks omitted).

The Court finds the reasoning of *Piano* and *Birbrower* persuasive. Because the Arbitration Agreement signed by Campbell and Adecco wholly lacks consideration—and indeed, never contained consideration—the parties never achieved a meeting of the minds. *See White v. Pruiett*, 39 S.W.3d 857, 862 (Mo. Ct. App. 2001) (consideration required for parties to have a "meeting of the minds" and mutually agree to contract formation). Therefore Campbell and Adecco never entered into a contract agreeing to arbitrate their disputes, and the Court cannot enforce a contract that does not exist. Doing

so would require the Court to create a new, valid contract through an artificial meeting of the minds. This is a judicial action the Court is not authorized to take.

Accordingly, the Modification Provision cannot be severed from the Arbitration Agreement, which is unenforceable. Any provisions contained within the Agreement—including the parties' professed promise to arbitrate their disputes—are unenforceable as well.

### III. Conclusion

For the foregoing reasons, Adecco's Motion to Compel Arbitration [Doc. 8] is denied.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: June 13, 2016
Jefferson City, Missouri