IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| HERNANDEZ CAMPBELL, ) <br> *On behalf of himself and all others* ) <br> *similarly situated,* ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ADECCO USA, INC., ) <br> ) <br> Defendant. ) | Case No. 2:16-cv-04059-NKL |

**ORDER**

Before the Court are Defendant Adecco USA's Motion to Dismiss [Doc. 58] and Plaintiff's Motion to Remand [Doc. 65]. For the following reasons, Plaintiff's Motion is granted and Defendant's Motion is denied as moot.

**I.     Background**

Defendant Adecco, a staffing company, routinely obtains information contained in consumer reports to conduct background checks on prospective and current employees, and uses the information in the reports as the basis for adverse employment action against such persons, such as refusing to hire them or deciding to fire them.

In August or September 2015, Plaintiff Hernandez Campbell applied for an employment position with Adecco. As part of his application, Campbell completed and signed a series of electronic documents. In November 2015, Campbell interviewed at Adecco's office and was hired as a forklift driver for Challenge MFG, a third-party Adecco client. Campbell started working for Challenge MFG in late November 2015.

On December 24, 2015, Adecco informed Campbell he was no longer eligible for employment due to the results of a consumer credit report Adecco had obtained. Campbell subsequently filed this class action suit in Missouri state court alleging Adecco violated the Fair Credit Reporting Act by retracting an offer of employment based upon information contained in a consumer credit report. Campbell contends that Adecco's actions constitute an adverse action which caused him to lose wages that he would have continued to earn while he was given time to review and respond to his consumer report. Defendant removed the case to this Court and Plaintiff amended his Complaint to allege three additional claims against Adecco: (1) improper disclosure; (2) improper authorization; and (3) breach of contract. [Doc. 50].

Adecco filed a Motion to Dismiss first arguing "[t]his Court does not have subject matter jurisdiction because Plaintiff has no injury-in fact or concrete harm." [Doc. 59, p.1] (citing *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016)). Campbell concedes this Court lacks subject matter jurisdiction and moved to remand this case back to Cole County Circuit Court. [Doc. 65]. In its subsequent filings opposing remand and supporting dismissal, "Adecco maintains that removal (of the adverse action claim) was proper and the Court has subject matter jurisdiction." [Doc. 80, p. 4]. Adecco now argues Campbell lacks standing, focuses on a factual attack against Plaintiff's adverse action claim, and contends that the three additional claims cannot be remanded because they were first filed in Campbell's Amended Complaint in this Court.

## II. Discussion

### A. *Spokeo* and Standing

In *Spokeo v. Robins*, the Supreme Court reaffirmed that to have Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." 136 S. Ct. at 1547 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)). The Parties do not dispute that the alleged statutory violations are traceable to Adecco's conduct, and that the alleged violations are redressable by statutory damages. Accordingly, the remainder of the discussion on the standing issue solely concerns the "injury in fact" requirement.

To establish injury in fact, a plaintiff must have suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560). To be "particularized," an injury "'must affect the plaintiff in a personal and individual way[.]'" *Id.* (citing *Lujan*, 504 U.S. at 560 n.1). The parties do not dispute that Campbell has alleged a particularized injury, which leaves at issue only the concreteness of his injury.

The Supreme Court in *Spokeo* distilled several "general principles" from its prior cases with respect to concreteness. *Id.* at 1549-50. A concrete injury is one that is "'real,' and not 'abstract.'" *Id.* at 1548 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 472 (1971), and RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 305 (1967)). Tangible injuries plainly satisfy this requirement. *Id.* at 1549. "[N]evertheless," intangible injuries may also "be concrete." *Id.* In evaluating whether an intangible injury satisfies the "concreteness" requirement, the *Spokeo* Court identified two important considerations: (1) "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts[;]" and (2) the judgment of Congress, which "'has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)).

The Supreme Court then elaborated on the connection between statutory standing and concrete injury. First, the Court explained that "Article III standing requires a concrete injury even in the context of a statutory violation[.]" *Id*. (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing")). Therefore, "[a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

At the same time, in cases where "harms may be difficult to prove or measure[,] . . . the violation of a procedural right granted by statute can be sufficient . . . [and] a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id*. at 1549 (citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998), and *Public Citizen v. Department of Justice*, 491 U.S. 440, 449 (1989)). The Supreme Court noted that although one of the FCRA's purposes is to protect against inaccurate credit reporting, "not all inaccuracies cause harm or present any risk of harm[.]" *Id*. at 1550.

**B.     The FCRA**

As relevant to this case, the FCRA provides that the consumer must be given the right to review and discuss the content of a consumer report with the prospective employer before adverse action is taken against him or her based on the report:

> In using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as presented by the Bureau under Section 1681g(c)(3) of this title.

§ 1681b(b)(3).

The purpose of these and other provisions of the FCRA is to ensure fair and accurate credit reporting, protect consumer privacy, and promote efficiency in the banking system. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007), and 15 U.S.C. § 1681 (Congressional findings and statement of purpose). For a thorough discussion of the FCRA's legislative history, see *Thomas v. FTS USA, LLC,* 2016 WL 3653878 (E.D. Va. June 30, 2016).

C.    **FCRA Adverse Action Claim**

In his original Complaint, Campbell alleged one count against Adecco for adverse action. This claim is based on § 1681b(b)(3), which provides a consumer the right to receive a copy of the report, and review and discuss its content with the prospective employer before adverse action is taken against him based on the report. Campbell alleges he was fired without receiving a copy of his consumer report or the opportunity to discuss the content of the report with Adecco.

This Court has already found that adverse action claims like Campbell's fail to establish a concrete injury sufficient to confer subject matter jurisdiction. *See Boergert v. Kelly Servs., Inc.*, 2016 WL 6693104, (W.D. Mo. Nov. 14, 2016), on reconsideration in part, *Boergert v. Kelly Servs., Inc.*, 2017 WL 440272 (W.D. Mo. Feb. 1, 2017). In this case, although Campbell contends he was deprived of statutorily required information, he has not shown any injury beyond the lack of access to that required information. He has not even alleged that he had a basis for challenging the information in the consumer report, which is the type of harm Congress was intending to prevent. *See Spokeo*, 136 S.Ct. at 1550 ("Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk.").

Adecco presents a factual attack on Campbell's adverse action claim. *See* [Docs. 61–63]. However, regardless of the factual support for Campbell's allegation, Campbell does not claim that the information in the consumer report was inaccurate. Nor does Campbell claim that

Adecco would have reached a different decision had it given him a reasonable amount of time before taking the adverse action. Absent any allegation that the information in the consumer report was inaccurate, or that compliance with the FCRA's pre-adverse action notice requirement would have resulted in Adecco reaching a different conclusion about his qualification for employment, any alleged loss he suffered could not have resulted from Adecco's failure to give him a reasonable amount of time to address what was revealed in her consumer report. *See Tyus v. United States Postal Serv.*, 2016 WL 6108942, at *7 (E.D. Wis. Oct. 19, 2016) (plaintiff claimed financial and other injury under the FRCA due to lack of pre–adverse action notice, but he did not allege the consumer report was inaccurate or that the employer would have reached a different decision had he been given notice; plaintiff therefore lacked standing); *Union v. Interstate Commerce Comm'n*, 891 F.2d 908, 919 (D.C. Cir. 1989) (plaintiff lacked standing to pursue a claim regarding an alleged procedural irregularity in the adoption of a rule; the alleged procedural irregularity was "too tenuously connected to a potential substantive injury, in that there was no reason to believe the outcome would have been different even if" the procedure had been correctly followed).

For these reasons, the Court cannot find a sufficiently concrete injury to establish standing to bring the adverse action count. Therefore, this Court lacks subject matter jurisdiction over this claim.

### D. FCRA Improper Disclosure and Authorization Claims

Campbell's claims for improper disclosure and authorization are based on §1681b(b)(2), which forbids a person from procuring a consumer report without obtaining the consumer's express written consent in advance. Furthermore, the consumer's consent must be made on a single document that contains only required information that is "clear and conspicuous."

6

Campbell alleges Adecco violated §1681b(b)(2) by giving him a document that contained extraneous information, some of which is inaccurate, and that the document did "not contain an authorization for the Defendant to obtain a consumer report for employment purposes." [Doc. 50, p. 25]. He claims he was therefore harmed because his privacy was invaded and he sustained an informational injury.

1. **Right to privacy**

Campbell is correct that he has a substantive right to keep his consumer report private unless he consents to release. But Campbell did sign a consent form authorizing the release of his consumer report to Adecco. He tries to invalidate his consent by arguing it is not in the form mandated by Congress because the consent form contains incorrect information and extraneous information. Nonetheless, he does not allege that he or a reasonable person would be confused by the extraneous information. Nor does he allege that he would not have signed it had he known some information was inaccurate. Instead, the crux of his complaint is that the consent form did not technically comply with the requirements of the FCRA. This is the kind of bare procedural violation that the Supreme Court described in *Spokeo*. *See also Shoots, et al. v. iQor Holdings US Inc.*, 2016 WL 6090723, at *5 (D. Minn. Oct. 18, 2016); *Larroque v. First Advantage LNS Screening Sols., Inc.*, 2016 WL 4577257 (N.D. Cal. Sept. 2, 2016); *Groshek v. Time Warner Cable, Inc.*, 2016 WL 4203506 (E.D. Wis. Aug. 9, 2016); *Smith v. Ohio State Univ.*, 2016 WL 3182675 (S.D. Ohio June 8, 2016). On this record, Campbell's right to privacy argument fails.

2. **Informational injury**

Campbell's alleged informational injury is also based on the consent form containing inaccurate and extraneous information. The Court agrees that the deprivation of statutorily mandated information can cause an intangible but concrete harm, if that harm is of the type

Congress sought to prevent. However, Campbell has not alleged that Adecco's disclosure form did not contain the information required by the FCRA. Rather, he claims it was not in the format required by the statute. It contained too much information. Further, although it permitted Defendant to obtain consumer report information after employment terminated, it appears this would not be a sufficiently concrete injury given *Braitberg v. Charter Commc'ns, Inc.,* 836 F.3d 925, 930-31 (8th Cir. 2016), which found an analogous allegation to be a "bare procedural violation." Absent some additional allegation of harm, the Court cannot find an informational injury based on the current record.

### E. State Law Breach of Contract Claim

Campbell's only remaining claim is for breach of contract under state law. "Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c)(3) to dismiss supplemental state law claims when all federal claims have been dismissed." *Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006); *see also, Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). Therefore, the Court need not address Campbell's standing to bring this remaining state law claim. Rather, because the Court lacks subject matter jurisdiction over the FCRA claims, the Court declines to exercise supplemental jurisdiction over Campbell's remaining state law breach of contract claim.

### F. Dismissal versus Remand

Campbell's request for remand rather than dismissal is well-taken. Adecco contends that Campbell consented to this Court's subject matter jurisdiction when he filed his Amended Complaint. However, Parties cannot consent to subject matter jurisdiction, and "[i]f . . . the case did not originate in federal court but was removed there by the defendants, the federal court must

remand the case to the state court from whence it came [i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." *Wallace v. ConAgra Foods, Inc.,* 747 F.3d 1025, 1033 (8th Cir. 2014) (quoting 28 U.S.C. § 1447(c)).

Adecco argues that because Campbell only asserted an adverse action claim in state court, the three additional claims filed in Plaintiff's Amended Complaint cannot be remanded. Defendant cites no authority for the proposition that claims added after removal cannot be remanded and the statute references "remand[ing] the *case*," not the individual claims found within a case. *See id.* Finding the Court lacks subject matter jurisdiction over Plaintiff's FCRA claims, and because this lawsuit originated in Cole County circuit court, this case shall be remanded to the state court from whence it came.

Because the Court grants Campbell's motion to remand, Adecco's motion to dismiss is denied as moot.

## III. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss [Doc. 58] is denied and Plaintiff's Motion to Remand [Doc. 65] is granted. This matter is remanded to the state court from which it was removed.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: April 24, 2017
Jefferson City, Missouri